**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ROBERT L. HILL and** | § | |
| **ISABELL G. MADSEN,** | § | |
| | § | |
| **V.** | § | **CAUSE NO. A-05-CA-732-LY** |
| | § | |
| **SODEXHO SERVICES OF TEXAS,** | § | |
| **L.P., and DAUGHTERS OF CHARITY** | § | |
| **HEALTH SERVICES OF AUSTIN** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The undersigned Magistrate Judge submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  Before the Court is Defendant Sodexho's Motion for Summary Judgment on Plaintiff Robert Hill's Claims (Clerk's Doc. No. 36); Defendant Sodexho's Motion for Summary Judgment on Plaintiff Isabel Madsen's Claims (Clerk's Doc. No. 35); and Seton's Motion for Summary Judgment (Clerk's Doc. No. 34).  On January 22, 2007, Judge Yeakel referred all dispositive motions to the undersigned for a Report and Recommendation.

**STANDARD OF REVIEW**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986);  *Ragas v.*

*Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986);  *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of

2

summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## BACKGROUND

In light of the summary judgment standard of review, the following facts are laid out and interpreted in the light most favorable to the non-movants.  *Ragas*, 136 F.3d at 458.  Plaintiffs Robert Hill, an African-American male, and Isabell Madsen, a Hispanic woman, were employed as food service workers at Brackenridge Hospital ("Seton").  Hill was at one point promoted to Food Service Supervisor.  Both claim that they were retaliated against in violation of Title VII when they were terminated by Seton.  Madsen has a Family and Medical Leave Act (FMLA) claim also.[1]

Madsen claims her rights under the FMLA were violated when, in February 2004, she took a two-day leave of absence while her husband was having a pacemaker installed.  She states that she filled out the requisite forms with Jean Sauls, the head supervisor, but that Sauls did not forward the forms onto Michael Webb, the person responsible for approving leave requests.  In July of that same year, Madsen again missed work due to her having to care for her husband's extensive health problems and a concomitant "stomach flu-like" illness that apparently onset while she was taking

---

[1]The Plaintiffs had previously pled a number of other claims, *see* Clerk's Doc. No. 9, but they have only briefed the Title VII retaliation claim and Madsen's FMLA claim in their summary judgment response, therefore those other claims are waived.  *See Whitmire v. Terex Telelect, Inc.,* 390 F. Supp.2d 540, 548 (E.D. Tex. 2005) (the plaintiff waived his claims when he did not raise or brief issues related to those claims in his response to motion for summary judgment).

care of her husband.  *See* Plaintiffs' Response, Madsen Affidavit.  When she returned to work she was suspended for taking unauthorized leave.

During this same general time period there was also something of an employee revolt going on among the food service workers at Seton. On January 24, 2004, Hill, in tandem with community activist Connie Kirk, submitted an extensive grievance report against Deborah Taylor – apparently a supervisor in the food service department – to Scott Carlisle, a "director" at Sodexho.  *See* Plaintiffs' Response at 4.  A few months later on May 11, 2004, both Hill and Madsen signed an open letter – along with thirty-plus other employees – advocating the promotion of Webb to director of the food service department at Seton.  However, another candidate, Judi Bork, was hired (Bork is white).  The Plaintiffs claim in their affidavits that, shortly after that, on May 27, 2004, they filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC), although those charges are not in the record.  On July 25, 2004, a letter signed by forty-plus employees, including Hill and Madsen, was circulated.  This letter severely criticized Bork's management skills – at one point she is deemed "a horrible person" – and accused her of, among other things, racial discrimination and harassment.  *See* Plaintiff's Response at Exh. C.  Two weeks after that, in August 2004, upper-management at Seton and Sodexho held a meeting with employees where they were allowed to openly air their grievances.  Hill states that he was very vocal at the meeting regarding his issues with Bork.  Madsen also made her displeasure with Bork known at the meeting.

On October 15, 2004, Hill was fired for violating company policy (this was the fourth time he had been disciplined for various infractions).  On October 28, 2004, Hill updated his charge of discrimination with the EEOC or filed a charge for the first time, it is not clear.  *See* n.2, *supra*.  The employer named in his charge was Seton.  Madsen was fired on December 3, 2004, after receiving

her fourth disciplinary sanction. She filed a charge of discrimination with the EEOC on December 7, 2004, against Seton. Both plaintiffs claim that the Defendants retaliated against them for participating in the protected activity of complaining about Bork. Madsen also alleges that two of the disciplinary actions against her ran afoul of the FMLA.

### ANALYSIS

Sodexho has filed separate motions for summary judgment as to each Plaintiff and Seton has filed a global motion for summary judgment. The Court will first take up, separately, Sodexho's individual motions against Hill and Madsen, and then Seton's motion. However, Sodexho's initial argument is a jurisdictional argument that applies to both Hill and Madsen, so that must be analyzed first.

### A.    Multiple or Co-employers under Title VII

Sodexho begins by arguing that neither Hill nor Madsen were employed by Sodexho and they did not file an EEOC Charge of Discrimination against Sodexho (just Seton), and Sodexho should therefore be granted summary judgment. *See* Sodexho's Motion for Summary Judgment on Robert Hill's Claims at Exh. 27. To address this issue, the Court must first discuss some basic principles regarding the manner in which a charging party must name his or her employer in a charge of discrimination.

An individual claiming discrimination in violation of Title VII must file a charge of discrimination with the EEOC within 180 days (or 300 days depending on the circumstances) "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 398 (5th Cir. 2007).  The filing of a timely EEOC charge is a statutory prerequisite to filing suit. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

109 (2002).  Another basic principle is that a party not named in the EEOC charge ordinarily cannot be sued in a subsequent civil action.  *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir.1989).  Naming a party in the EEOC charge provides notification to the charged party of the allegations asserted against that party and allows that party a chance to participate in reconciliation and voluntary compliance. Courts, however, have liberally construed the naming requirement.  *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1358 (11th Cir.1994); *Alvarado v. Board of Trustees*, 848 F.2d 457, 460 (4th Cir.1988); *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir.1981).  As a result, many courts have concluded that, for Title VII purposes, an employee may have multiple employers.  *See, e.g., King v. Dalton*, 895 F. Supp. 831, 837-39 (E.D. Va.1995); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith*, 611 F. Supp. 344, 347-49 (S.D.N.Y.1984); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 (E.D.N.Y.1994).  Further, the procedures referred to in, and required by, Title VII are not intended to be "stumbling blocks" to the accomplishment of the statutory objectives of Title VII.  *See Hammer v. Hillsborough County*, 927 F. Supp. 1540, 1543 (M.D. Fla.1996) (citing *Vanguard Justice Society, Inc. v. Hughes*, 471 F. Supp. 670, 688 (D. Md.1979)). When determining whether the purposes of Title VII are met when less than all potential employers are named in a charge:

> [C]ourts do not apply a rigid test but instead look to several factors including: (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings . . . .  Other factors may be relevant depending on the specific facts of the case.

*Virgo*, 30 F.3d at 1359.

EEOC complaints are generally written by lay persons unfamiliar with Title VII's technical requirements. *Scelte v.Delicatessen Support Services, Inc.*, 57 F. Supp. 1327, 1354 (M.D. Fla. 1999). Therefore, the technical requirements of Title VII "must be liberally construed in order to accomplish the purposes of the Act." *See id.* Two exceptions to the requirement that each defendant be named in the EEOC charge of discrimination exist: "(1) where the body of the charge contains an informal reference to the defendant, or (2) where sufficient 'identity of interest' between the named respondent and the unnamed defendant exists, such that Title VII's intent to provide the defendant with notice and an opportunity to attempt conciliation is satisfied." *See Hammer*, 927 F.Supp. at 1543-44.

Finally, at least for Title VII purposes, an employee can have more than one employer. In determining whether an "employer" under Title VII can consist of more than one entity, a court should consider several factors. *See McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987). The Court must determine whether the entities are "highly integrated with respect to ownership and operations," and also whether the entities share: (1) common management; (2) centralized control of labor relations; (3) common financial control; or (4) interrelation of operations. *See id.*

Neither party gives an especially lucid description of the confluence of Sodexho and Seton, Sodexho provides no description in its motion of its relationship with Seton, or what control it exercises over the people who work in the food service area of the hospital. Clearly, Seton, as the operator of the hospital, exercises some control over the people working there. Further, it is apparent that some relationship (likely contractual) exists between Seton and Sodexho for the provision of food services at the hospital, and Plaintiffs worked in the food service area. Sodexho, however,

provides the Court no information regarding its role and responsibilities with regard to the Plaintiffs. Rather, it remains completely silent on the issue, and stands on its conclusory statement that it did not employ the Plaintiffs, and it was not named in the EEOC charge.

Based on what is in the record, there are clearly fact questions on these issues. Sodexho states that Judi Bork was a Sodexho employee when the alleged discrimination took place. *See* Sodexho's Motion for Summary Judgment on Robert Hill's Claims at 7. It is clear from the various grievances delineated above that Bork was *de facto* if not "*de jure*" at least one of the Plaintiffs' bosses; she is the one being agitated against, after all. *See id.* at Exh. 20. In addition, the meeting called after the second group employee letter (alleging discrimination against Bork) was attended by Jesus Garza, a Seton Executive, and Scott Carlisle, a Sodexho employee. Perhaps most conspicuously, Hill received memos outlining performance expectations from Bork – a Sodexho employee – and Bork signed, as "Director," three of Madsen's "Employee Coaching/Counseling Report[s]" (*i.e.*, disciplinary actions).

Of the four factors listed in the *McKenzie* Test – (1) common management; (2) centralized control of labor relations; (3) common financial control; and (4) interrelation of operations – there is a fact question to at least three of them, with financial control being neutral (or, rather, unknowable, given the state of the record).[2] Sodexho, as the movant under Rule 56, bears the burden of demonstrating its entitlement to summary judgment. With regard to whether it was the Plaintiffs' employer or whether it was required to be named in the Plaintiffs' EEOC charges, it has failed to

---

[2]It is interesting to note that Seton has wholesale adopted Sodexho's motions for summary judgment on these issues, suggesting that there is at least a confluence of interests with regard to this case. Parallel to that, only Seton addresses Madsen's FMLA claim, and Sodexho in turn incorporates this part of Seton's motion. This suggests, per *Virgo*, a "similarity of interest between the named party and the unnamed party." *Virgo*, 30 F.3d at 1359.

carry that burden.  There is quite clearly a fact issue precluding summary judgment for Sodexho on these arguments.

**B.     Sodexho's Motion for Summary Judgment on Hill's Claim**

Hill has abandoned all of his claims except for his Title VII retaliation claim.  *See* Plaintiffs' Response to Motions for Summary Judgment, Clerk's Doc. No. 39; *see Whitmire v. Terex Telelect, Inc.,* 390 F. Supp.2d 540, 548 (E.D. Tex. 2005) (the plaintiff waived his claims when he did not raise or brief issues related to those claims in his response to motion for summary judgment).

A plaintiff may prove a retaliation claim either by direct or circumstantial evidence.  *McCoy v. City of Shreveport*, 492 F. 3d 551, 556 (5th Cir. 2007).  The Court analyzes cases built on the latter, like this one,[3] under the framework set forth in *McDonnell Douglas Corp. v. Green.*  411 U.S. 792, 802 (1973).  To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.  *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).  If the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action.  *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (discrimination); *Gee*, 289 F.3d at 345 (retaliation).  The employer's burden is only one of production, not persuasion, and involves no credibility assessment.  *Russell*, 235 F.3d at 222.  If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving

---

[3] Hill argues that his affidavit provides some direct evidence of discrimination.  This will be taken up below in section "B," sub-section "3" of the "Analysis" section.

that the employer's proffered reason is not true but instead is a pretext for the real or retaliatory purpose. *Id*. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5 th Cir. 2005).

### 1.       Prima Facie Case of Retaliation

Sodexho argues that Hill cannot make out his *prima facie* case because there is no evidence of a causal connection between the writing and vocalizing of the various grievances[4] (the protected activity) and Hill being terminated. Although far from a slam-dunk, Hill has created a fact question as to the causal connection element of his prima facie case.

The plaintiff's burden of establishing a *prima facie* case is not onerous. *Sanders v. Anadarko Petroleum Corp.*, 108 Fed. App'x 139, 142 (5th Cir. 2004). A plaintiff need only make a very minimal showing. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). Hill has carried his burden. The timeline of events shows – and the Court must take the facts in the light most favorable to Hill – that at least some of the disciplinary actions brought against Hill were preceded by the protected activity of filing grievances against supervisors, especially Bork, and verbalizing his concerns with what he felt to be a discriminatory workplace. *See* Plaintiff's Response at 4-5. This is enough to establish a fact question as to the causal connection element of his prima facie case.

---

[4] These include, for sake of argument, the grievance against Taylor, and participation, both as signatory of the group grievance letters and vocalizing his concerns at the meeting.

### 2.   Sodexho's Legitimate Non-Retaliatory Reasons

Sodexho proffers a number of legitimate, nonretaliatory reason for its employment action. *See Gee*, 289 F.3d at 345. As is clear, Sodexho has more than met its burden of "production." *Russell*, 235 F.3d at 222. Hill was verbally counseled twice – in August and September 2003 – for performance issues relating to his duties as a food service supervisor (not properly ordering the correct products and amounts of food). *See* Sodexho's Motion for Summary Judgment on Hill's Claims at Exh. 4 ("Seton Employee Coaching/Counseling Report). There were three separate incidents relating to these issues. *Id*. Hill admitted responsibility for at least two of the incidents at his deposition. *See id*. at pp. 66-71 of Hill Deposition.[5] In March 2004, due to performance issues, Hill was re-trained on management issues by a purchasing manager employed by Seton. *Id*. at Exh. 7. On April 23, 2004, Hill was disciplined for performance issues that occurred four days earlier. *Id*. at Exh. 6 ("Seton Employee Coaching/Counseling Report"). Hill, in his deposition, took responsibility for three of the four incidents chronicled in the counseling report. *Id*. at Hill Deposition, pp. 105-110. On May 25, 2004, Hill was suspended from work for repeat performance issues – not correctly ordering or storing food – on which he had been counseled on three previous occasions (August 2003, October 2003, and April 2003). *Id*. at Exh. 9. As outlined in that same counseling report, because this was the third time Hill was being disciplined for the same performance issue, he was warned that he would be terminated if similar misconduct occurred again. *Id*. At his deposition, Hill declined to take responsibility for these issues. *Id*. Hill Deposition at pp.

---

[5] Hill claims that one incident was discrimination, but expressly claims that it was not racial discrimination, presumably because the other employee was a minority. Hill Deposition at 68-71. From the context, it appears that Hill is using the word "discrimination" in a broader way (i.e., he was written up for something another employee was not).

127-29.  On June 16 and 30, 2004, Hill was given two separate memos regarding performance expectations, *see id*. Exhs.12 & 15; the earlier of which stated that Sodexho "want[ed] to give [Hill] the opportunity to consider an alternative position" at Seton if Hill chose not to continue on in "the challenging role" of storeroom supervisor.  *Id*. at Exh. 12.  The latter memo noted Hill had declined the opportunity to transfer to another position.  *Id*. at Exh. 15.  A few weeks later, on July 8, 2004, Hill received a third memo noting the areas where he was still not meeting the performance expectations.  *Id*. at Exh. 17.  On October 15, 2004, Hill received a fourth written counseling report for ignoring a memo regarding the exits from which employees were permitted to exit (due to safety concerns).  Exh.24.  Given that this was his fourth written counseling report, Hill was terminated.  *Id*.  As noted earlier, the above evidence meets Sodexho's burden of producing a legitimate, non-discriminatory reason for its termination of Hill.  The burden therefore shifts back to Hill to offer some evidence that the articulated reasons are pretextual.  *Russell*, 235 F.3d at 222.

**3.  Hill's Evidence of Pre-text**

Hill's evidence of pretext is weak.  He states in his affidavit, for example, that he was wrongly disciplined for leaving through the forbidden door on October 15 because, as a supervisor, he was allowed to leave through that door.  *See* Plaintiff's Response at p. 5; Hill Affidavit at ¶¶ 11-12.  However, the summary judgment evidence flatly contradicts this point.  The memo relating the "Food Service Dock Parking and Access Policy" clearly states that it applies to "[a]ll Food Services employees" and that they "must enter and exit by other doors."  *See* Sodexho's Motion for Summary Judgment on Hill's Claims at Exh. 26.  Other than his bald claim, Hill has produced no evidence that the policy contained an exception for supervisory employees.

Hill also argues that his affidavit provides some direct evidence of discrimination.  In that affidavit, Hill states that a mid-level Sodexho manager, "Deepesh Verma[,] told me that Judi Bork had told [the managers] during the management meeting that the managers should keep a careful eye on [Hill]" because they want to have him terminated.  *See* Plaintiff's Response, Hill Affidavit, ¶ 12. Even if this could be construed as an admission of a party-opponent – an argument Plaintiff does not make – there are still *two* levels of hearsay ("double-hearsay") and each requires an exception to the general prohibition on hearsay.  *See Thomas v. Atmos Energy Corp*., 223 Fed. App'x 369, 373-74 (5th Cir. 2007).  Hill does not provide such a justification, thus, this evidence is barred by Federal Rule of Evidence 801.  *See* Fed. R. Evid. 801.

At bottom, Hill's arguments amount to an assertion that he was retaliated against for protected activity and was "terminated for fabricated reasons."  Plaintiff's Response at 5.  However, Hill only offers his own affidavit as evidence of this, while Sodexho offered a number of pieces of evidence, most prominently the fact that Hill – *before* he filed any grievances – was being disciplined for the same behavior he was later disciplined for (during the time period when he was filing grievances) and that he now claims was pre-textual.  The summary judgment evidence shows that Hill was repeatedly disciplined for the same conduct, given multiple chances to succeed, and given a chance to transfer.  The evidence further shows that Hill blatantly ignored a memo that clearly applied to him.  In sum, Hill has failed to rebut Sodexho's evidence and produce a genuine issue of material fact that Sodexho's articulated bases for its action were pre-textual.

Accordingly, the Court RECOMMENDS that Sodexho's Motion for Summary Judgment on Plaintiff Robert Hill's Claims be GRANTED.

13

**C.**      **Sodexho's Motion for Summary Judgment on Madsen's Claim of Retaliation**

Madsen has abandoned all of her claims except for her Title VII retaliation and FMLA claims.  *See* Plaintiffs' Response to Motions for Summary Judgment, Clerk's Doc. No. 39; *see also Zhu v. Gonzales*, 493 F.3d 588, 593 n. 10 (5th Cir. 2007) (Zhu did not challenge dismissal of claim in her brief, so issue waived).[6]  Sodexho only explicitly addresses Madsen's retaliation claim while adopting or incorporating Seton's motion for summary judgment on her FMLA claim.  Madsen's FMLA claim is analyzed below.

As with Hill's claim, Madesen's claim is also reviewed under the burden-shifting analysis set forth in *McDonnell Douglas.*

**1.**      **Prima Facie Case of Retaliation**

Sodexho argues that Madsen cannot make out her *prima facie* case because there is no evidence of a causal connection between Madsen's termination, and her grievance letters and speaking up at the employee meeting with management.  The plaintiff's burden of establishing a prima facie case is not onerous.  *Sanders v. Anadarko Petroleum Corp.*, 108 Fed. App'x 139, 142 (5th Cir. 2004).  To establish a prima facie case, a plaintiff need only make a very minimal showing.  *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

Madsen has carried her burden, although not by much.  Madsen was reprimanded a number of times – as will be developed below – *before* she engaged in any protective activity.  However, the Court must take the facts in the light most favorable to Madsen.  Some of the disciplinary actions brought against Madsen were, at least after May 2004, preceded by the protected activity of filing

---

[6] Sodexho again attempts to argue that it should be granted summary judgment because Madsen was a Seton and not a Sodexho employee.  For all the reasons mentioned above, this argument fails.

grievances against supervisors, especially Bork, and verbalizing her concerns with what she felt to be a discriminatory workplace. *See* Plaintiff's Response, Madsen Affidavit, at ¶¶ 4 & 6. This is enough to establish a fact question as to the causal connection element of her prima facie case.

**2.      Sodexho's Legitimate Non-Retaliatory Reasons**

Sodexho proffers a number of legitimate, nonretaliatory reason for its employment action. *See Gee*, 289 F.3d at 345. As is clear, Sodexho has carried its burden of "production." *Russell*, 235 F.3d at 222.

In 2004, Madesen was reprimanded, in the form of an Employee Coaching/Counseling Report, for having unscheduled absences from work on December 29, 2003, January 9, 24, and 25, 2004. *See* Sodexho's Motion for Summary Judgment on Plaintiff Isabell Madsen's Claims at Exh. 36. At her deposition, Madsen agreed that "this was a legitimate counseling" for the unscheduled absences. *Id.* at Madsen Deposition, p. 50. On May 3, 2004, Madsen was disciplined for displaying a hostile attitude toward a customer in the hospital cafeteria a few days earlier. *Id.* at Exh. 37. However, Madsen disagreed with the customer's version of the events, characterizing it as untruthful. *Id.* On July 15, 2004, Madsen was again reprimanded via a counseling report for unscheduled absences on three different days within a three month period. *Id.* at Exh. 41. Madsen agreed that these were unscheduled absences (subject, however, to her FMLA claim analyzed below). *Id.* at Madsen Deposition at pp. 82-83. On December 3, 2004, Madsen received a fourth disciplinary action for getting into a verbal altercation with a co-worker on November 28, 2004; because this was her fourth counseling report in a one-year period she was terminated according to Seton's disciplinary rules. *Id.* at Exh. 45. Madsen disagreed with the version of the events as stated

in the counseling report.  *Id*.  As noted, this evidence meets Sodexho's burden of production on this point.

### 3. Madsen's Evidence of Pre-text

Because Sodexho has produced a number of legitimate, nonretaliatory reasons for its employment action, the burden shifts back to Madsen to show that there is a fact issue as to Sodexho's reasons, *i.e.*, that they are not true but instead are a pretext for the real retaliatory purpose. *Russell*, 235 F.3d at 222.

Madsen contends that she was fired "for fabricated reasons" and that the verbal confrontation was "artificially instigated" and that this is evident from the fact that the *actual* instigator – Madsen's fellow employee – was not punished for her conduct.  *See* Plaintiff's Response at 5.  Madsen's summary judgment evidence in support of this version of events is her affidavit.  However, Sodexho has proffered the statements of two employees who were at or around the November 28 verbal confrontation.  *See* Sodexho's Motion, Madsen Deposition at pp. 101-107.  Both statements undermine Madsen's version of the events proffered in her affidavit.  Even granting Madsen the benefit of the doubt and conceding that this produces a fact question as to this single incident, it is not enough, standing alone, to demonstrate pretext.  Madsen's summary judgment evidence, especially in the face of the evidence that Sodexho puts forth – evidence that shows that Madsen had a habitual problem with unscheduled absences from work (a problem that manifested itself well before she engaged in any protected activity) – is not enough show that she would not have been terminated "but for" her engagement in the protected conduct of filing and verbalizing grievances. *Septimus*, 399 F.3d at 608.

16

Accordingly, the Court RECOMMENDS that Sodexho's Motion for Summary Judgment on Plaintiff Isabel Madsen's Claims be GRANTED.

**D.      Seton's Motion for Summary Judgment**

**1.      Title VII Retaliation Claims.**

As the co-defendants no doubt recognized, given the work-sharing of the motions and their adoption of each other's motions for summary judgment, if Sodexho prevailed on its motions for summary judgment on Hill's and Madsen's claims, then Seton would also be entitled to summary judgment.[7]  Because the Court has recommended that Sodexho's motions for summary judgment be granted as to Hill's and Madsen's claims of Title VII retaliation, it also RECOMMENDS that Seton's Motion for Summary Judgment be GRANTED as to these claims in kind.  This leaves only Madsen's FMLA claim.

**2.      Madsen's FMLA Claim**

In the case of foreseeable absences, the FMLA requires employees to provide an employer with at least thirty days of advance notice. 29 C.F.R. § 825.302.  For unforeseeable absences, employees should provide an employer with notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir.1998).  Employees need not "expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed.  The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). "The critical question is whether the information imparted to the employer is sufficient to reasonably

_____

[7] Because the Court found that there was a fact issue as to whether or not Seton and Sodexho were co-employers to the Plaintiffs, a summary judgment grant that there was no retaliation on part of one applies equally to the other.

apprise it of the employee's request to take time off for a serious health condition." *Satterfield*, 135

F.3d at 977 (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir.1995)).  The

FMLA assures unpaid leave for family members who must care for relatives with a "serious health

condition." *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006).  The FMLA defines a

"serious health condition" as "an illness, injury, impairment, or physical or mental condition that

involves . . . continuing treatment by a health care provider."  29 U.S.C. § 2611(11).

Twice, Madsen contends, her rights under FMLA were violated.  The first was in February

2004 when she was reprimanded with verbal counseling after she missed two days of work – January

24 and 25, 2004 – to care for her husband who was having a pacemaker implanted in his chest.

Madsen contends in her affidavit that she filled out the requisite forms with Jean Sauls, the head

supervisor, but that Sauls did not forward the forms onto Michael Webb, the person responsible for

approving leave requests.  *See* Plaintiffs' Response, Madsen Affidavit at ¶ 2.  However, as Seton

correctly points out, at her deposition, Madsen took responsibility for the absence and agreed that

is was an unscheduled absence under Seton's policy and the reprimand was legitimate counseling

for a series of unscheduled absences.  *See* Seton's Reply at Madsen Deposition pp 45-50.  Further,

there are no FMLA leave request forms in the record related to this absence.

Madsen attempts to create a fact question solely by means of her affidavit which was

prepared after her deposition.  Setting aside the fact that a "a party may not create a fact issue by

submitting an affidavit that that contradicts, without explanation, the party's prior deposition

testimony," *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482-83 (5th Cir. 2002); *see also*

*John G. Mahler Co. v. Klein Karoo Landboukooperasie*, 58 F.3d 636 (5th Cir. 1995) ("a nonmovant

cannot defeat a summary judgment motion by submitting an affidavit which contradicts, without

explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue."), Madsen has failed to provide any evidence, other than her self-serving affidavit, that is germane to the FMLA issue.  There is no evidence of when she learned of her husband's need for pacemaker surgery, nor, if it was indeed an emergency, does she provide any evidence that she informed Seton "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a); *Satterfield*, 135 F.3d at 977.  For example, she does not provide any records of when the surgery was scheduled or the nexus between her discovery of the surgery date and her notifying Seton of the conflict.  In other words, Madsen fails to create a genuine issue of material fact on this portion of her FMLA claim.

The second alleged FMLA violation occurred the following summer (July 15, 2004) when Madsen contends, in her Response, that she had to be out of work for three days when her husband had to have one of his legs amputated.  *See* Plaintiffs' Response, Madsen Affidavit at ¶ 5.  While she again contends that she filed the correct leave forms on this occasion, those forms are not in the summary judgment record.

However, her affidavit tells a different, and somewhat convoluted, story.  Providing no exact dates, she begins by describing her husband as a double amputee and then contends that she was forced to leave work for three days to care for him (around the time of the surgery).  At this point, her version of the events becomes thoroughly unclear.  She states that while caring for her husband she came down with "stomach flu-like symptoms," but that she went to work only to be told to go home to shower "to make sure [she] was not spreading germs." *Id*.  While she was home showering, her husband slipped off the bed and "badly damaged his wrist" such that he had to be taken to the emergency room.  *Id*.

19

As Madsen testified at her deposition, *see* Seton's Reply, Madsen Deposition at pp. 83-84, and her handwritten comments on the counseling report, she admits she missed work because of her husband's hand/wrist (she points to each in different documents).  *Id*. at 41.  The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  Department of Labor ("DOL") regulations go into elaborate detail, setting out five types of conditions that can qualify as continuing treatment by a health care provider.  29 C.F.R. § 825.114(a)(2).  The only one of these that could possibly be applicable here provides:

> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>>
>> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2).

While an injured wrist (or hand) is not an injury to blithely overlook, Madsen provides no evidence that creates a fact question on this issue.  She states that she had to take her husband to the emergency room because of the injury, but fails to offer any evidence regarding the extent or severity of the injury, and how long it incapacitated him.  Thus, she does not show how his injury involved "[a] period of incapacity" where he would not be able to take care of himself for three calendar days.

29 C.F.R. § 825.114(a)(2)(i).  A vague statement in an affidavit that "[her husband] badly damaged his wrist" is not enough to create a fact question on this issue.  *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5 th Cir. 2004).

Accordingly, the Court RECOMMENDS that Seton's (and, by extension, Sodexho's) motion for summary judgment on Madsen's FMLA claim be GRANTED.

## RECOMMENDATION

The Court **RECOMMENDS** that the District Court **GRANT** Defendant Sodexho's Motion for Summary Judgment on Plaintiff Robert Hill's Claims (Clerk's Doc. No. 36); Defendant Sodexho's Motion for Summary Judgment on Plaintiff Isabel Madsen's Claims (Clerk's Doc. No. 35); and Seton's Motion for Summary Judgment (Clerk's Doc. No. 34), and enter judgment that Plaintiffs take nothing on their claims.

## WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 29th day of November, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

22